DOMINGO ALAMEDA MARTÍNEZ, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1290. Submitted January 26, 1953.—Decided March 10, 1954.

*Luis López de Victoria* for appellant. The Registrar appeared by brief.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Alberto Cesari Bacó and María Laura Lorenzi Pietri contracted marriage in the city of Yauco, Puerto Rico, on June 8, 1945. Domingo Alameda Martínez and his wife América Román de Alameda, mortgaged certain immovables by deed No. 177, of June 7, 1946, before Notary Luis López de Victoria, to secure a loan, in favor of Alberto Cesari Bacó. On April 18, 1952 the District Court of Puerto Rico, Ponce Section, granted a divorce decree to Alberto Cesari Bacó and María Laura Lorenzi Pietri. On June 17, 1952, the former spouses, Alberto Cesari Bacó and María Laura Lorenzi Pietri, executed deed No. 155 before Notary Luis López de Victoria cancelling the mortgage which Domingo Alameda Martínez and his wife América Román de Alameda had executed in favor of the conjugal partnership of the former.

When deed was presented to the Registry of Property of San Germán, the Registrar of San Germán, Juan Juan Toro, recorded the cancellation with the following note:

"Record of the cancellation of mortgage is made, upon examining another document, by marginal note on the fifth inscription of property No. 3362 at folio 220, reverse, of Vol. 79 of Yauco, *subject to the result of the liquidation of the conjugal partnership formerly existing between Alberto Cesari Bacó and María Luisa Lorenzi Pietri,* insofar as the credit cancelled is concerned."

Domingo Alameda Martínez files this administrative appeal alleging that the Registrar of the Property of San Germán erred "in considering that the liquidation of the conjugal partnership was necessary before the divorced spouses could freely dispose of the property constituting the hereditary estate."

■■ This Court has adopted the liberal rule that once the conjugal partnership is dissolved by the death of one of the spouses or by divorce, any surviving spouse, or either of the two divorced spouses, or both jointly, may sell, assign or mortgage any right and action, share, title or interest which they may have in the community property of the partnership pending liquidation, when such alienations are made on indeterminate shares of the conjugal property *and subject always to the result of a liquidation of the conjugal partnership: Becerra* v. *The Registrar of Guayama,* 27 P.R.R. 770, 771 (Hutchison), (1919) referring to a mortgage created by a surviving spouse; *Allende* v. *The Registrar of San Juan,* 28 P.R.R. 529 (Del Toro), (1920) referring to a mortgage created by a surviving spouse; *Muñoz* v. *Registrar of Caguas,* 30 P.R.R. 68, 70 (Del Toro), (1922) referring to a mortgage created by a surviving spouse; *Maldonado* v. *Registrar,* 45 P.R.R. 816, 817 (Hutchison), (1933), referring to a conveyance of a condominium by a divorced spouse; *Pérez* v. *Registrar,* 62 P.R.R. 760, 763 (Travieso), (1944), referring to a sale performed jointly by two divorced spouses; *Méndez* v. *Registrar,* 63 P.R.R. 212 (Snyder), (1944), referring to a sale performed jointly by two divorced spouses; *Vega* v. *Tossas,* 70 P.R.R. 368, 371,

(Negrón Fernández), (1949), referring to a sale, assignment and conveyance of all his rights and actions by a divorced spouse.

A careful examination of this principle reveals that our rule has always been based on the assumption that any alienation of community property subject to the contingencies of the liquidation of the conjugal partnership, constitutes an assignment of an indeterminate or an estimated value within certain portion of the property, rather than an alienation of a net or specific value within the same portion of property.

This case deals with the total cancellation of a mortgage, created by the conjugal partnership, executed jointly by two divorced spouses. The cancellation of a mortgage is an act of ownership and at the same time of alienation: *Pillich* v. *Registrar*, 68 P.R.R. 521, 525, (De Jesús), (1948); *Baquero et al.* v. *The Registrar*, 22 P.R.R. 22, 24 (Aldrey), (1915). The cancellation of a mortgage subject to the contingencies of the liquidation of a conjugal partnership is equivalent, in reality of law, to an assignment of the probable or indeterminate rights and actions that both spouses may have over said mortgage credit, but it is not equivalent to discharging the debtor from his liability to other persons.

What, in pure legal theory, can the limitation be on the capacity of divorced spouses, before or during the liquidation of a conjugal partnership, to execute a cancellation of a mortgage which wholly frees a mortgagor from any further responsibility? In order to make the question at issue clearer, it is convenient to set forth fully the pertinent institution of the civil law.

Section 97 of the Civil Code of Puerto Rico establishes that "a divorce *can only be granted in an action instituted in the ordinary manner*" and by judgment rendered therein by a district court; § 101 of the same Code provides that "from the day *proceedings in a suit for divorce are begun,* no debt contracted by the husband on account of the com-

munity property shall be valid, unless authorized by the court," § 105 of the same Code establishes that "a divorce carries with it a complete dissolution of all matrimonial ties, *and the division of all property and effects* between the parties to the marriage"; § 1328 of the same Code insofar as pertinent provides that "in order that the separation may be decreed *it shall be sufficient to present the final judgment rendered against the guilty . . . spouse"*; § 1329 of the same Code establishes that "after *the separation of property has been ordered* the conjugal partnership shall be dissolved, and its liquidation shall be made according to the provisions of this Code"; § 1330 of the same Code establishes that "the suit for the separation of property in case of divorce, and the final judgment declaring it, when involving real property, shall be entered and recorded, respectively, in the proper registries of property"; § 1331 of the same Code establishes that "the separation of property *shall not prejudice rights previously acquired by creditors"*; § 28 of Act No. 24 of April 22, 1931 (Sess. Laws, p. 258) which sets forth the requirements for the recording of births, marriages and deaths, provides that "in all cases in which a court renders a decree of divorce, it shall be the duty of the secretary of said court to send to the Commissioner of Health, free of cost, a certified copy of the decree for the purpose of keeping divorce statistics"; providing further that the information contained in the decree *shall be used only for statistical purposes;* § 6 of the Code of Commerce of Puerto Rico provides that "a married woman may freely engage in commerce and industry without other formalities than those required for men." In the business or industry in which a woman may engage, her liability shall be confined to her private property, its fruits, income and interest, the immediate and direct profits obtained from such industry or trade, and the property acquired with such profits; and she may dispose of all such property without her husband's consent,

and only in case there is express or tacit consent of the husband shall the community property be liable for the results of the trade or industry undertaken by the woman, but if the husband wishes to express his will that such community property shall not be liable, he may do so in writing; § 15 of the same Code referring to the operations that should be set forth in the Mercantile Registry establishes in paragraph 7 thereof that on the page of the record allotted to each merchant, there shall be entered "the express consent of the husband, to which § 6 refers"; paragraph 8 of the same Section provides that the revocation of authorization granted a wife to engage in commerce shall also be recorded in the Mercantile Registry.

In order to discuss the question at issue, we must first establish also the consonance existing between § 105 of the Civil Code of Puerto Rico which deals with the effects of divorce and which provides that divorce carries with it *the division of all property and effects between the parties to the marriage* and § 101 of the same Code, which states that from the day proceedings in a suit for divorce are begun, no debt contracted by the husband (or wife) unless authorized by the court shall be valid, and §§ 1328, 1329, 1330 and 1331 of the same Code which establish respectively, (1) the right by the husband or the wife to separation of the property merely by presenting the final judgment rendered, (2) the dissolution of the conjugal partnership and its liquidation according to the provisions of the Code, (3) the need to enter and record in the Registry of Property both the suit for the separation of property—usually in divorce cases this is accomplished in the same suit for the divorce properly speaking, that is, in the dissolution of the matrimonial tie—and the final judgment declaring it, when real property is involved and (4) that the separation of the property shall not prejudice rights previously acquired by creditors, prior to the day when the divorce proceedings begin.

It would also seem convenient to state that our provision of civil law which establishes, as one of the effects of divorce, the separation of property, is neither altogether Spanish nor altogether French, but on the contrary, has some qualities which are strictly Puerto Rican. For example, § 97 of our Civil Code, which regulates divorce proceedings, is equivalent only in part to § 67 of the Spanish Civil Code; § 101 of our Civil Code which establishes that from the day divorce proceedings are begun, no debt contracted by the husband or wife unless authorized by the court shall be valid, has no concomitant provision in Spain, since, on the contrary § § 1435 and 1436 of the Spanish Civil Code provide for a different administration system during the pendency of the separation, and it is partially similar to § 150 of Louisiana and § 271 of the Code Napoleon which provide that any debt or disposition of property made by the husband after the proceedings have begun is void if it is proved that the debt or disposition of the property was made for the purpose of defrauding the rights of his wife; § 105 of our Civil Code which provides that a divorce carries with it a complete dissolution of all matrimonial ties and the division of all properties and effects between the parties to the marriage, has no equivalent in the Spanish Civil Code and agrees only with that of Louisiana on the dissolution of all matrimonial ties; on the contrary § § 1328, 1329, 1330 and 1331 of our Civil Codee exactly agree with § § 1433, 1434, 1437 and 1438 of the Spanish Civil Code and have no counterpart in the Civil Code of Louisiana.

In order to determine the limitation on the capacity of the divorced spouses, before or during the liquidation of the conjugal partnership, for carrying out the alienation which a cancellation of mortgage implies, we must also determine in the first place who are the true interested parties in the liquidation of a conjugal partnership dissolved by divorce, whose interests may be impaired by such alienation:

"The interested parties are the spouses or any surviving spouse and the heirs of the other, *and the partnership creditors, if any, insofar as their rights are not duly secured by mortgage.* Inasmuch as *such creditors* do not always *exist, when there are none, the consent of the known interested parties is sufficient,* who always are the widow or widower and the heirs of the deceased, after their capacity has been established. Furthermore, in practice the acts of alienation or encumbrance of community property in this condition are recorded *without any inquiry as to whether or not any creditors exist,* either because proof of such a negative fact (nonexistence) can not be required *or because it is considered that, in any event, the rights of the creditors against the partnership are protected."* 9 Manresa 721, first paragraph, (*Instituto Editorial Reus,* 5th ed.) (1950).

In the instant case, since we are concerned with divorced spouses, the only persons who are really interested in the liquidation of the conjugal partnership would be: (1) the two spouses and (2) the partnership creditors who are not secured by mortgage, *in the case of debts* contracted *before the divorce proceeding has begun.* Undoubtedly, when the Registrar of Property of San Germán recorded the cancellation of mortgage "subject to the results of the liquidation of the conjugal partnership," he was only thinking of the possible interests of the former creditors of the partnership not secured by mortgage. Perhaps he was prompted to act thus by the reasoning set forth in *Pérez* v. *Registrar,* 62 P.R.R. 760, 766, where we stated:

"We do not think that any serious objection can be made to the liberal attitude taken by this Supreme Court ever since its decision in *Allende* v. *Registrar of Property of San Juan, supra.* The legal situation of the creditor is really improved by the application of its rule. A creditor whose claim is not secured by an encumbrance upon the community property, has no protection against a *bone fide* transfer of their property made by the spouses during the existence of the conjugal partnership. By permitting the divorced spouses, or the surviving spouse, to convey or encumber the community property with-

out a previous liquidation of the partnership, but with the condition that the conveyance or encumbrance shall be recorded subject to the reservations which we have already mentioned, *the creditor is given a guarantee which he previously lacked,* for such a creditor can then proceed against the property so recorded and will not be required to prove that the transfer was made without the existence of a just price or sufficient consideration."

In order to determine the accuracy of this last statement, we must make clear the rights enjoyed by unsecured creditors with respect to their transactions with a conjugal partnership subsequently dissolved by divorce.

Pursuant to § 1296 of the Civil Code of Puerto Rico, the conjugal partnership shall always begin on the same day that the marriage is celebrated, the conjugal partnership being liable pursuant to § 1308 for all the debts and obligations contracted during the marriage by the husband and also for those contracted by the wife in those cases in which she can legally bind the partnership.

The conjugal partnership can not be renounced during the marriage, except in case of judicial separation, pursuant to § 1297 and such renunciation shall be included in a public instrument, in which case, the creditors shall have the right granted to them in § 955 of the Code, that is, to request the district court having jurisdiction, to authorize them to accept what would have been the renouncers' share in the partnership. Since the conjugal partnership, in the absence of express provisions, shall be governed by the rules of the partnership contract, pursuant to § 1298 of the same Code, it follows that the partnership creditors shall be preferred over the creditors of each partner, with regard to the partnership property, as may be seen from the congruence between that Section and § 1590 of the same Code.

Until the very day divorce proceedings are begun, the separation of the property shall not prejudice rights previously acquired by creditors, pursuant to § 1331 of the Civil

Code of Puerto Rico. Therefore, from the day that the marriage is contracted until the day divorce proceedings are begun, that is, until the filing of the divorce suit, any debt contracted by the husband or by the wife, as the case may be, directly affects all the property of the conjugal partnership irrespective of the separation of property caused by divorce between the divorced spouses.

Pursuant to § 101 of the Civil Code of Puerto Rico "from the day proceedings in a suit for divorce are begun, no debt contracted by the husband on account of the community property shall be valid, unless authorized by the court." So we have that when a debt is contracted by the husband or wife, from the day the suit is filed until the day the divorce decree is final, the spouse contracting it shall be solely liable therefor, unless expressly authorized by the court where the divorce suit is being heard, and the conjugal partnership, as such, shall not be liable to any creditor for the debts contracted by either of the spouses while divorce is pending.

After the divorce decree becomes final, pursuant to § 105 of our Civil Code, the division of the property between the parties takes place. This means that a community of property is produced which is supposed to be managed by both spouses until the very moment when that community is dissolved, as partly transpires from § 1329 of our Civil Code. Since neither of the spouses has the right to alienate the conjugal property individually, and on the other hand, since after the judgment becomes final the court has no power to authorize any debt against the conjugal partnership, the creditor shall only be entitled to collect from each one of the spouses, as their own personal liability for any obligation contracted by either of them during the period between the date when the judgment has become final and the date of the deed of liquidation of the conjugal partnership. The partnership therefore is not liable for the payment of any obligation contracted during that latter period.

Therefore, as soon as the divorce decree with its corresponding separation of property becomes final, the conjugal partnership in liquidation would only be liable to the creditors who might have contracted validly with the partnership, *before the divorce proceedings had begun.* After the debts, liens and obligations of the partnership are paid, as disclosed by § 1329 read together with § § 95 and 1322 of our Civil Code, the net remainder of the partnership property shall be divided share and share alike between the husband and wife, or their respective heirs, if any of the spouses should die after the divorce decree becomes final.

Upon carefully examining the entire institution of the civil law, it is clear that the variations contained in our law with regard to the proceedings of management, dissolution, liquidation and adjudication, from the day the divorce proceedings begin until the day that each spouse obtains the net share of his or her property, are designed for the *protection of the spouses themselves,* above all for the protection of the woman, rather than for the protection of the creditors of the conjugal partnership. Why is this so?

Without resorting to the lyricism employed by some commentators who assert that the conjugal partnership can not be identified, for practical purposes, with partnerships instituted for profit, this is so, because normally the creditors would only be affected in case both spouses should agree to defraud their creditors, by way of simulated conveyances, waiver of rights and other fraudulent or injurious procedures, and for such cases, our Civil Code provides a complete system of defense in favor of the creditors. The Code makes no distinction between concealments, simulations, or alienations made by other debtors, in any other class of obligations, and the concealments, simulations or alienations made by the spouses during their marriage, or during the community of property which results from the moment the final divorce decree dissolves the partnership until the

final liquidation and adjudication, in turn, dissolve the community.

In the first place, we should bear in mind that from the day the divorce suit commences the creditors are afforded, if not such a complete publicity system as that of the French civil law, at least enough publicity to protect their credits against the partnership. As we have seen, § 97 of our Civil Code provides that a divorce may only be granted by an ordinary suit, that is, by a public proceeding. As soon as the divorce action is filed pursuant to § 1330 of our Civil Code, the suit may be entered in the Registry of the Property where the real property belonging to the conjugal partnership is recorded. The judgment rendered forms part of a public registry accessible to any interested party. Still, § 28 of Act No. 24 of April 22, 1931 requires a subsequent entry of the judgment in the Registry of Vital Statistics of Puerto Rico. In the case of a married woman doing business with the consent of the husband, § 15 paragraphs 8 of the Code of Commerce of Puerto Rico, 1932 ed., provides the method for entering in the Mercantile Registry the cancellation of the marriage license. If on the contrary, it is a case of the divorce of a spouse outside of the jurisdiction [absent], notice of the complaint as well as of the judgment is made by edicts. We realize that all this could be arranged more scientifically requiring in each divorce case a more methodical publication system for the benefit of the partnership creditors, but the present procedure can not be regarded as not being sufficient protection for any careful creditor who takes the proper legal steps to collect his credit.

Now, assuming that a creditor had no knowledge of the divorce proceeding, would any attempt to defraud the creditors, on the part of either or both the divorced spouses, leave such creditors without any remedy against their defrauders?

The question must be answered in the negative. Fraudulent actions must be comprised within the following cate-

gories: (1) waiver by either or both spouses of his or their share in the community property after the partnership is dissolved; (2) abandonment of the community property by either or both spouses, after the partnership is dissolved; (3) alienation for a good or for a valuable consideration in favor of a third party, by either or both spouses, after the partnership is dissolved. Provisions are made for the three situations in our Civil Code.

Section 1297 of our Code (§ 1394 of the Spanish Civil Code) establishes that when the renunciation of the conjugal partnership takes place by reason of separation or after the marriage has been dissolved or annuled, such renunciation shall be set forth in a public instrument, and the creditors shall have the right granted them by § 955 of our Code (§ 1001 of the Spanish Civil Code), that is, the creditors may ask the court with jurisdiction to authorize them to be subrogated to the rights of the renouncer.

Section 1064 of our Code (§ 1111 of the Spanish Civil Code) establishes that the creditors may exercise all the rights and actions of their debtors, "the debtor of my debtor or my own debtor," in case of inaction of the spouses, in order to collect what is due to them, that is, to exercise what is known as subrogatory or indirect action. As to the applicability of § 1111 to cases of separation of property see 9 Manresa 795 (*Instituto Editorial Reus*, 5th ed.), (1950); as to the gloss on subrogatory or indirect action see 8 Manresa 271, same edition.

Section 1064 of our Code, (§ 1111 of the Spanish Code) provides that the creditors may contest, through the corresponding action of recovery, any acts which the debtor may have performed in fraud of their rights connected with § 1249 of our Code, (§ 1297 of the Spanish Code). The latter establishes that any alienation made gratuitously shall be presumed to have been executed in fraud of creditors. In this case the creditor may avail himself of the action of rescission known as "*acción pauliana.*" 8 Manresa 275

*et seq.*, same edition. At page 278 of said citation, we find the commentary relating to the Judgment of January 14, 1935 of the Supreme Court of Spain:

"In order to attain the proper results from this procedural remedy the following requirements must be present: (*a*) the existence of a credit in favor of the plaintiffs; (*b*) that the debtor should act maliciously in fraud of his creditor . . . ; (*c*) that the insolvency of the debtor be brought about directly, not only because of his impossibility to pay in full, but also because of lessening economic possibilities of ability to pay the whole amount capable of being demanded by his creditors; (*d*) that such insolvency should cause the debtor a certain prejudice due to his fraudulent act and this should exist at the time of judicial interpretation and (*e*)· that the act be fraudulent *either on the part of the debtor* alone when he alienates gratuitously or *"when a third party participates*—"consilium fraudis," such as in the simple foreseeability of injury, that is, the knowledge of the injury which might be caused to the creditor by the real or simulated impoverishment."

Reading this Section together with § 1250 of our Code (§ 1298 of the Spanish Code) to mean that a person who acquires in bad faith property alienated in fraud of creditors shall be liable to the latter for any damages caused to them by the alienation whenever, for any reason whatever, it should be impossible for him to return such property, the impossibility of returning the property alienated is foreclosed if it is legally in the possession of third persons who have not acted in bad faith.

In brief, after the separation of property is decreed by a final divorce judgment, if any of the divorced spouses, or both, should attempt to alienate fraudulently the property belonging to the conjugal partnership, a former creditor who is not secured shall have the following rights: (1) to be subrogated to the rights and actions of the renouncer, if either of the divorced spouses decides to renounce their share in the conjugal property; (2) to pursue the property in possession of any of the two divorced spouses; (3) to be

subrogated to the rights and actions of the divorced spouses which they would not wish to exercise on their behalf; (4) to request the rescission of any fraudulent conveyances gratuitously performed by the divorced spouses; (5) to request the rescission of any fraudulent conveyances for a valuable consideration performed by the divorced spouses; (6) to request from the party to whom the conjugal property was fraudulently alienated, the corresponding compensation for damages, if the thing may not be restored because it is in the possession of innocent third parties. Only then, would the last words of Manresa's first gloss—9 Manresa 721— acquire true meaning "because it is considered that, in any event, the rights of the creditors against the partnership are protected."

██ If this is so, what need is there for the Registry of Property, which should only contain entries of real rights or of the rights of creditors who are secured, to establish, on its own account, an encumbrance in favor of the former creditors who are not secured, without the creditors having then any legal steps to make such entry valid by attachment or by any other remedy previously recorded in the Registry? How does the registrar know whether there are former creditors of the conjugal partnership who are not secured, unless such creditors take steps validly appearing from the registry?

After making an exhaustive review of the corresponding institution of law, we believe that it tends to protect the spouses' rather than the creditors' rights; that insofar as former creditors who are not secured are concerned, their rights may not be greater, or better guaranteed during the liquidation of the conjugal partnership than during the existence of the partnership and that our former ruling in *Pérez* v. *Registrar*, 62 P.R.R. 760, 765, is not buttressed either by our civil law or by our mortgage law; that if no affirmative action is taken by such former creditors who are not secured, before the corresponding judicial authorities,

the Registry of Property has no basis to presume the existence of such creditors, in order to bar the joint action of two divorced spouses to carry out those alienations which are necessary for the former liquidation or the informal disposition of the property belonging to them; that in the majority of divorce cases the property subject of liquidation does not warrant the additional expenses of a formal liquidation and that it should be presumed, in the absence of affirmative acts on the part of the former creditors who are not secured, and which are entered in the Registry, that the two divorced spouses are the only parties really interested in the liquidation and therefore, that they may jointly agree to alienate their rights in the partnership.

It should be likewise clear that when there is no agreement between the spouses for the corresponding alienation, registration subject to the result of the liquidation should prevail, for in such case, it is a question of protecting the real parties in interest and in this sense, we ratify our former doctrine to that effect. In this case, the debtors of the dissolved partnership could always resort to the remedy of the tender of payment and the subsequent consignation established by § 1130 of our Civil Code.

The note appealed from will be reversed insofar as it is interpreted that the cancellation of the mortgage is "subject to the result of the liquidation of the conjugal partnership constituted by Alberto Cesari Bacó and María Luisa Lorenzi Pietri," and the Registrar is ordered to record the cancellation without any condition whatsoever.

Mr. Chief Justice Snyder did not participate herein.